Doe on the Demise of Abbott and Another *v.* Crocker.

Chapter 29, R. S. 1843, enacts that in every case where real estate has been sold under a judgment afterwards reversed, the judgment-defendant shall have restitution; or, in other words, the sale shall be inoperative, unless the purchaser, at the execution-sale, shall have had no notice of the errors or the pendency of the proceedings to obtain a reversal of the judgment, such as the parties or their attorneys are supposed to have. Such notice does not mean notice of the reversal.

ERROR to the *Decatur* Circuit Court.

Monday,
*June 2.*

SMITH, J.—Ejectment by the plaintiff in error against the defendant in error. Plea—not guilty. Judgment for the defendant. A bill of exceptions contains the evidence.

The plaintiff exhibited a deed from one *Billings* to *Abbott*, dated in *July*, 1840; and it being admitted that *Abbott* came lawfully into the possession of the premises in controversy under this deed, the plaintiff here rested.

The facts relied upon as a defence are as follow: One *Warrener* obtained a judgment against *Abbott*, in an attachment-suit for 131 dollars; and an execution having issued thereon, the premises were sold, and conveyed by the sheriff to one *Lathrop*, on the 22d of *February*, 1845.

*Lathrop* sold and conveyed to one *Hamilton* in *May* of the same year; and during the same month, (*May*, 1845,) *Hamilton* gave a bond for a deed to one *Demaree*, who assigned the bond to one *Young;* and *Hamilton* executed a deed to *Young* in *December*, 1845.

In *December*, 1846, *Young* conveyed to the defendant, *Crocker*.

It also appeared that while *Young* or *Crocker* was in possession and claiming the land, in *September*, 1846, *Abbott* executed a quit-claim deed, conveying all his interest to *Demaree;* and that *Billings* held a mortgage on the land, to secure a debt of 120 dollars, being part of the purchase-money to be paid by *Abbott*, and which *Young* paid off while in possession under his deed from *Hamilton*.

On the 11th of *December*, 1845, the judgment in the

attachment-suit was reversed by the Supreme Court. *Lathrop* had actual notice of the pendency of the writ of error, but it is not shown that *Hamilton*, at the time he purchased from *Lathrop*, had actual notice of the pendency of the writ.

The plaintiff contends that the sheriff's deed to *Lathrop* conveyed no title to him, as *Abbott* was entitled to have restitution of the premises on the reversal of the judgment in attachment. The defendant replies to this, that though, if *Lathrop* was the party still in possession, his knowledge of the pendency of the writ of error might affect his title, the notice to him cannot militate against the title of the defendant claiming under *Hamilton*, who was a *bona fide* purchaser without such notice.

We have the following statutory provisions on this subject:

Section 17, c. 29, R. S. p. 456. "The reversal of any judgment or decree, under or by virtue of which any real estate shall have been sold or transferred, or the title thereto decreed or confirmed, shall not have the effect to avoid any such sale, transfer, or title decreed or confirmed, if the person to be affected thereby shall be, or shall *claim under*, a *bona fide* innocent purchaser, without notice, and not a party to the record or attorney or solicitor of any party thereto."

The three next sections provide that in cases of reversal, where, by reason of the preceding section, the party injured cannot be restored to his estate, he shall be entitled to an action against the person by virtue of whose judgment he has been injured, and regulate the amount or sum which may be recovered in such action. The 21st section enacts that in *every case* of a reversal of any judgment or decree, under or by virtue of which any real estate shall have been sold, and *not provided* for in the four preceding sections, the person deprived of such real estate shall have restitution of it.

It is also provided that such person may obtain a writ of *restitution* by motion, but that this remedy shall not be construed to prohibit him from recovering the premises or

the possession thereof by any other action under which the same may be recovered.

We think it is clearly the meaning of these provisions that in every case where real estate has been sold under a judgment afterwards reversed, the judgment-defendant shall have restitution; or, in other words, the sale shall be inoperative, unless the purchaser, at the execution-sale, shall have had no notice of the errors or of the pendency of the proceedings to obtain a reversal of the judgment, such as the parties to the judgment or their attorneys are supposed to have. The notice here spoken of cannot mean notice of the *reversal*, as the judgment of reversal, itself, would be notice to every body.

It cannot, therefore, be said that *Crocker*, the defendant in this suit, *claims under* a purchaser without notice, within the meaning of the statute, because he does claim under the sale to *Lathrop* who had notice, and it can make no difference whether *Hamilton* or *Young*, as intermediate purchasers, had such notice or not. *Hamilton* could not have maintained his title as a claimant under a purchaser without notice, and, of course, he could transmit to his grantees no better title than he had himself.

It is also contended that *Abbott* cannot maintain ejectment because he conveyed his title to *Demaree* before the suit was commenced. This would be true if his deed to *Demaree* was valid, but it is void because it was made while the premises were held in adverse possession by *Young*,

The defendant thinks this deed may be considered as inuring to his benefit, but we cannot perceive any advantage he can derive from it in this respect. There are cases where a subsequent conveyance to a grantor may operate to the advantage of the grantee, because the former may be estopped by his covenants, from contesting the title of the latter, if defective, and the defects were cured by the deed afterwards made to the grantor. But this is not such a case.

It is scarcely necessary to say that the payment of the mortgage-debt due to *Billings* by *Young* while he was in

possession, did not entitle him or his grantee to retain possession of the premises against the mortgagor.

We think, therefore, that upon the evidence, (and there does not appear to have been any controversy as to the facts,) the plaintiff was entitled to recover on the demise of *Abbott*.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*J. Ryman*, for the plaintiff.

*A. Davison*, for the defendant.